IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Suprabhat Pandey, *et al.*, | : | |
| | : | Case No. 1:07-cv-664 |
| Plaintiffs, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER |
| Baikuntha Sharma*, et al.*, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on (1) Plaintiffs' Motion to Enjoin Defendants from Proceeding in Second-Filed Litigation (doc. 5); (2) Defendants' Motion to Dismiss Plaintiffs' Complaint (doc. 6); (3) Plaintiffs' Motion for Leave to File Second Amended Complaint (doc. 11); and (4) Plaintiffs' Motion for a Rule 16 Conference (doc. 20).  For the reasons that follow, the Court **DENIES AS MOOT** the Motion to Enjoin, **DENIES** the Motion to Dismiss, **GRANTS** the Motion for Leave to File, and **GRANTS** the Motion for a Rule 16 Conference.

**I.     BACKGROUND**

**A.     Facts Underlying the Dispute**[1]

On January 16, 2006, Plaintiff Suprabhat Pandey met with Defendant Biakuntha Sharma, an officer, director, and principal owner of Defendant American Links International, Limited ("ALI"), in Michigan to discuss a wireless camera technology developed by Pandey.  Pandey and Sharma entered into a business relationship pursuant to a one-year oral agreement to

---

[1] Except where specifically noted, the statement of facts is derived solely from the Plaintiffs' allegations in the Complaint (doc. 1), the Amended Complaint (doc. 2), and the proposed Second Amended Complaint (doc. 11-2).

commercialize the technology. Sharma agreed to pay Pandey the sum of $1000 per month plus expenses pursuant to their agreement. In February 2006, Pandey prepared and filed a provisional patent application for the wireless camera technology with the U.S. Patent Office.

Sharma paid Pandey $1000 per month plus expenses from February 2006 through November 2006. Sharma and Pandey met in Butler County, Ohio and Hamilton County, Ohio during that period to discuss the venture and participate in promotional and marketing activities.

In December 2006, Sharma told Pandey he would no longer pay Pandey the $1000 monthly payment or expenses. Pandey responded that he would start a new company to continue his efforts to commercialize the technology. Sharma did not pay Pandey in December 2006 or January 2007 pursuant to their January 2006 agreement. Pandey formed Plaintiff MVision LLC in February 2007 in order to market the technology.

On May 30, 2007, an attorney for Sharma and ALI sent a letter to Pandey's attorney regarding the parties' failed business relationship and their dispute over control of the wireless camera technology. (Doc. 11-2 Ex. A.) Defendants' attorney requested in the letter that Pandey cease activity regarding the technology and assign to ALI rights to the technology. (Id.) The parties met in Findlay, Ohio, on August 13, 2007 to attempt to resolve their dispute but were not successful. (Doc. 6 at 5.)

**B.    Procedural History**

On August 14, 2007, Plaintiffs Pandey and MVision filed a Complaint in this Court against Defendants Sharma and ALI. The original Complaint included one count for declaratory judgment seeking that the Court declare that Plaintiffs "own all rights, title, and interest in all intellectual property" connected with the specific wireless camera technology.

On August 20, 2007, Sharma and ALI initiated a separate lawsuit in the United States District Court for the Eastern District of Michigan, No. 2:07-cv-13508, against Pandey and MVision for breach of contract and tortious interference with contract.[2]  As recognized by the Honorable Judge Paul D. Borman, the allegations in the Michigan lawsuit are duplicative of those in this suit as they involve the same parties, arise from the same set of facts, and seek resolution of the same or related breaches of contract relating to the wireless camera technology.  Sharma v. Pandey, No. 2:07-cv-13508, slip op. at 6 (E.D. Mich. Dec. 27, 2007).[3]

On August 28, 2007, Pandey and MVision filed an Amended Complaint in this action stating one count for breach of contract and one count for declaratory judgment again concerning the wireless camera technology.

Thereafter, in September 2007, Plaintiffs moved for an injunction enjoining Defendants from proceeding in the Michigan lawsuit.  Defendants opposed that motion.

 Also in September 2007, Defendants filed a Motion to Dismiss the Amended Complaint.  Defendants contended that this Court lacks subject matter jurisdiction, that venue is improper in the Southern District of Ohio, and that Plaintiffs have failed to state a claim upon which relief can be granted.  Plaintiffs did not file a memorandum in opposition to the Motion to Dismiss, but instead moved for leave to file a Second Amended Complaint.  Plaintiffs asserted that the primary purpose of the proposed Second Amended Complaint is to clarify facts relative to subject matter jurisdiction, but Plaintiffs also have stated several new factual allegations concerning the parties' relationship and describing events which occurred in the State of Ohio.

---

[2] The Sharma complaint in the Michigan lawsuit is attached as an exhibit to Doc. 6.

[3] The Sharma decision is attached as an exhibit to Doc. 20.

3

Plaintiffs again stated one count for breach of contract and one for declaratory judgment in the proposed Second Amended Complaint. Defendants opposed the motion for leave to amend.

On December 27, 2007, Judge Borman granted in part Pandey and MVision's motion to dismiss, transfer, or stay the Michigan lawsuit. Sharma, No. 2:07-cv-13508, slip op. at 6. Judge Borman stayed the Michigan lawsuit "until the resolution of the pending Ohio action" on the basis of the first-to-file rule. Id. slip op. at 7. Subsequently, Plaintiffs moved for a pretrial conference in this case pursuant to Rule 16 of the Federal Rules of Civil Procedure. Defendants opposed holding a pretrial conference until the other pending motions have been adjudicated.

**II.     ANALYSIS**

**A.     Plaintiffs' Motion to Enjoin Defendants from Proceeding in Second-Filed Action**

Plaintiffs moved the Court to enjoin Sharma and ALI from proceeding in the Michigan lawsuit. The motion is now moot because Judge Borman has stayed the Michigan lawsuit pending resolution of the instant action. Accordingly, the Motion to Enjoin Defendants from Proceeding in Second-Filed Litigation (doc. 5) is **DENIED AS MOOT**.

**B.     Defendants' Motion to Dismiss Plaintiffs' Complaint and Plaintiffs' Motion for Leave to File Second Amended Complaint**

Defendants moved to dismiss Plaintiffs' Amended Complaint and they opposed Plaintiffs' motion for leave to file a Second Amended Complaint. Defendants contend that the Amended Complaint should be dismissed for lack of subject matter jurisdiction or for improper venue. Defendants further contend that the Court should deny leave to file a Second Amended Complaint because it is being proffered in bad faith and suffers from the same defects as the Amended Complaint.

    **1.     Subject Matter Jurisdiction**

One of Defendants' primary contentions is that the Court lacks subject matter jurisdiction over this action. Preliminarily, Defendants contend that the Court lacked of subject matter jurisdiction over the original Complaint, and therefore the original Complaint was void *ab initio* for purposes of the "first-to-file" rule. The first-to-file rule provides "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc., 16 F. App'x 433, 437 (6th Cir. 2001) (internal quotation and citation omitted).

Defendants cite a *qui tam* decision, United States *ex rel.* Bledsoe v. Community Health Systems, Inc., 501 F.3d 493 (6th Cir. 2007), for the proposition that a complaint that is "legally infirm from its inception" cannot preempt a later-filed action for the purposes of the first-to-file rule. Id. at 523. However, the holding in the Bledsoe case was based on a particular *qui tam* statute, 31 U.S.C. § 3730(b)(5),[4] which is inapplicable here. See Sharma, No. 07-cv-13508, slip op. at 7 (stating that *qui tam* cases have no bearing on the instant dispute). Moreover, because the proposed Second Amended Complaint resolves many of Defendants' jurisdictional objections, the Court will grant Plaintiffs leave to file the proposed Second Amended Complaint. The proposed Second Amended Complaint "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading[,]" and therefore, it relates back to the date of the original Complaint. Fed. R. Civ. P. 15(c)(1)(B). This action was the first to be filed.

---

[4] "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

In analyzing whether the Court has subject matter jurisdiction over the Second Amended Complaint, the Court notes that the Declaratory Judgment Act does not independently provide a district court with subject matter jurisdiction. Davis v. U.S., 499 F.3d 590, 594 (6th Cir. 2007); Heydon v. MediaOne of Southeast Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003).[5] Plaintiffs' allegations in the Amended Complaint and/or the proposed Second Amended Complaint, therefore, must satisfy diversity jurisdiction pursuant to 28 U.S.C. § 1332. The diversity jurisdiction statute authorizes district courts to hear "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The burden is on Plaintiffs to assert affirmative allegations establishing the requisite elements of the Court's jurisdiction. McNutt v. General Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Heard v. SBC Ameritech Corp., No. 05-CV-71712-DT, 2005 WL 1802086, *9 (E.D. Mich. July 27, 2005). "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C.A. § 1653.

Plaintiffs allege in the proposed Second Amended Complaint that Pandey is citizen of Nepal and a resident of Butler County, Ohio and that MVision is licensed to do business and has its principal place of business in Ohio. (Doc. 11-2, 2d Am. Cmpt. ¶¶ 1-2.) "A limited liability company is not treated as a corporation and has the citizenship of its members" for purposes of establishing diversity citizenship. Homfeld II, L.L.C. v. Comair Holdings, Inc. 53 F. App'x 731,

---

[5] The Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act merely provides district courts that already have jurisdiction "with the discretion to fashion a remedy." Heydon, 327 F.3d at 470.

732 (6th Cir. 2002). Pandey is the sole member of MVision LLC so his citizenship controls. (Doc. 11-2, 2d Am. Cmpt. ¶ 2.) Plaintiff further alleges that Sharma is a citizen of Michigan and that ALI is a Kentucky corporation with its principal place of business in Michigan. (Id., 2d Am. Cmpt. ¶¶ 3-4.) The Court finds there is a complete diversity of citizenship between the parties.

Plaintiffs' allegations also must satisfy the jurisdictional amount. Usually, "the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." Rosen v. Chrysler Corp., 205 F.3d 918, 920-21 (6th Cir. 2000). Plaintiffs allege the following specific facts in the proposed Second Amended Complaint:

1. The parties entered into a one-year oral agreement beginning in January 2006 wherein Sharma would pay Pandey $1000 per month plus expenses (¶ 11);

2. The parties would share 50/50 in the profits derived from the wireless camera technology over the course of the one-year agreement (¶ 12);

3. Sharma paid Pandey $1000 per month plus expenses for the ten-month period between February 2006 and November 2006 (¶¶ 15-16);

4. Sharma advised Pandey in December 2006 that he would no longer pay the $1000 per month plus expenses and he did not make payments owed for December 2006 or January 2007 (¶¶ 18, 21);

5. Sharma failed to pay expenses which he had agreed to pay under the Agreement (¶ 21); and

6. Sharma's breach terminated the parties' one-year agreement in December 2006 and ended Sharma's right to share in any profits for the remainder of the agreement term (¶ 22).

(Doc. 11-2, 2d Am. Cmpt.) Additionally, Plaintiffs assert that the value of both the breach of contract and the declaratory judgment claim exceed $75,000. (Id., 2d Am. Cmpt. ¶¶ 30, 33.) This assertion is supported by an exhibit in which Defendants state that they had received a

purchase order for the wireless camera technology in the amount of $93,000.  (Id., 2d Am. Cmpt. Ex. 1.)

The damages for the breach of contract claim do not appear to meet the jurisdictional amount standing alone.  Plaintiffs' contractual damages are limited to the approximately $2000 in lost monthly payments and expenses, plus 50% of the $93,000 purchase order.  Plaintiffs have not alleged that other purchase order contracts were pending which could have been completed during the pendency of Pandey's one year agreement with Sharma.  Regarding the claim for declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977).  The $93,000 purchase order suggests that the value of ownership of the technology exceeds the $75,000 jurisdictional minimum.  Therefore, the it does not appear "to a legal certainty" based on these allegations that "the claim is for less than the jurisdictional amount."  Rosen, 205 F.3d at 920-21.

In another jurisdictional argument, Defendants assert that the Court should not exercise jurisdiction over the claim for declaratory relief because there is no pending justiciable controversy and/or the matter is not ripe for adjudication.  Defendants contend that Plaintiffs assert only speculative future injuries because no patent rights in the wireless camera technology have been awarded to date.  See e.g., Display Research Laboratories, Inc. v. Telegen Corp., 133 F. Supp. 2d 1170, 1173-74 (N.D. Cal. 2001) (holding that a declaratory judgment for ownership or inventorship of pending patent applications was not ripe).  Defendants further contend that district courts only have jurisdiction over inventorship issues after a patent has issued.  See id. at 1174-75.  Defendants' arguments conflate the issues of inventorship and ownership.  The issues

can be interrelated — determining who invented the property that is the subject of a patent or patent application can be the first step in adjudicating ownership — but the issues are not synonymous. See e.g., Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed. Cir. 1993); Rustevader Corp. v. Cowatch, 842 F. Supp. 171, 173 (W.D. Pa. 1993). Plaintiffs facially seek declaratory judgment on the issue of ownership. To the extent that the ownership issue was an aspect of the oral contract between the parties, the issue might be resolved on the basis of contract law, not patent law. "It is well settled that an action based on a contract, which involves underlying patent rights, does not arise under the patent law." Rustevader, 842 F. Supp. at 173; see also Boggild v. Kenner Products, Div. of CPG Prods. Corp., 853 F.2d 465, 468 (6th Cir. 1988) (holding that an action to enforce or set aside a contract concerning patent rights arises under contract law, not patent law). The justiciability and ripeness issues raised by Defendants are complex. Further briefing by the parties is necessary before the Court could dismiss the declaratory judgment claim on this basis.

    **2.    Venue**

Defendants also contend that venue is improper in the Southern District of Ohio, at least as to the Amended Complaint. The venue statute states in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). "If the plaintiff presents a prima facie case that venue is proper, after reading the pleadings and affidavits in the light most favorable to the plaintiff, the defendant's

motion will be denied." Zimmer Enterprises, Inc. v. Atlandia Imports, Inc., 478 F. Supp. 2d 983, 986 (S.D. Ohio 2007).

Plaintiffs have alleged facts in the proposed Second Amended Complaint to support a prima facie case of proper venue here. Plaintiffs allege that Pandey and Sharma met "more than once" in Butler County, Ohio between February to December 2006 to discuss their business venture. Plaintiffs also allege that Pandey and Sharma participated in promotional and marketing activities for the wireless camera technology in Hamilton County, Ohio. (Doc. 11-2, Am. Cmpt. ¶ 17.) Defendants do not specifically challenge venue in their memorandum opposing leave to file the Second Amended Complaint. Accordingly, the Court will not dismiss this action for improper venue.

### 3. Bad Faith and Gamesmanship

Underlying Defendants' substantive arguments discussed above is the theme that Plaintiffs engaged in bad faith forum-shopping, dilatory behavior, and gamesmanship by preemptively filing an ill-conceived declaratory judgment action in this District Court. District courts can exercise discretion to disregard the enforcement of the first-to-file rule due to "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." Zide, 16 F. App'x at 437. Additionally, district courts have discretion to decline to hear suits for declaratory judgment. Id. "A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing." Id.

This Court agrees with the Honorable Judge Borman that Defendants have not established that Plaintiffs filed the original Complaint in bad faith or to engage in gamesmanship or improper forum-shopping. See Sharma, No. 07-CV-13508, slip op. at 7 ("After review, the

Court does not find evidence of bad faith on the part of [Pandey and MVision] in pursuing their Ohio action.")  Nonetheless, the Court is concerned that Plaintiffs have now filed or attempted to file three separate complaints to set forth facts and allegations which were known to Plaintiffs at the time they filed the original Complaint.  The Court will not be inclined to permit future amended pleadings.

    **4.**    **Conclusion**

In accordance with the analysis above, Defendants' Motion to Dismiss Plaintiffs' Complaint (doc. 6) is **DENIED** and Plaintiffs' Motion for Leave to File Second Amended Complaint (doc. 11) is **GRANTED**.

**C.**    **Plaintiffs' Motion for a Rule 16 Conference**

Plaintiffs' Motion for a Rule 16 Conference (doc. 20) is **GRANTED**.  The Court will hold a preliminary pretrial conference on August 28, 2008 at 2:30 p.m.  The parties should be prepared to discuss at that conference the justiciability and ripeness issues.

**III.**    **CONCLUSION**

For the foregoing reasons, (1) Plaintiffs' Motion to Enjoin Defendants from Proceeding in Second-Filed Litigation (doc. 5) is **DENIED AS MOOT**; (2) Defendants' Motion to Dismiss Plaintiffs' Complaint (doc. 6) is **DENIED**; (3) Plaintiffs' Motion for Leave to File Second Amended Complaint (doc. 11) is **GRANTED**; and (4) Plaintiffs' Motion for a Rule 16 Conference (doc. 20) is **GRANTED**.

The preliminary pretrial conference is set for August 28, 2008 at 2:30 p.m.  The parties shall file their joint discovery plan by August 14, 2008**.**

    IT IS SO ORDERED.

             <u>s/Susan J. Dlott</u>
             Susan J. Dlott
             United States District Judge